# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

CHRISTOPHER YERINGTON,

    Plaintiff,

v.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

    Defendant.

Case No. 2:17-cv-849
JUDGE GEORGE C. SMITH
Magistrate Judge Jolson

## OPINION AND ORDER

This matter is before the Court upon Defendant The Lincoln National Life Insurance Company's Motion to Dismiss Plaintiff Christopher Yerington's Amended Complaint ("Lincoln's Motion") (Doc. 20). The motion is fully briefed and ripe for disposition. For the following reasons, Lincoln's Motion is **GRANTED**.

### I. BACKGROUND

Plaintiff Christopher Yerington was employed by Consultant Anesthesiologists, Inc. as a Physician Anesthesiologist from July 1, 2006 to January 17, 2010. (Doc. 10, Am. Compl. ¶ 5). While employed by Consultant Anesthesiologists, Yerington was a participant in a group long-term disability insurance policy (the "Plan") issued and administered by Defendant The Lincoln National Life Insurance Company ("Lincoln"). (*Id.* ¶¶ 2, 6). On January 17, 2010, Yerington left his employment with Consultant Anesthesiologists due to a disability, and he was approved for long-term disability benefits under the Plan effective on that date. (*Id.* ¶¶ 5, 8).

Benefits under the Plan are determined in part based on what "period" the claimant is in at the time he or she seeks benefits. The "Elimination Period" is defined as "90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period." (Doc. 10-1, Plan at 3). Following the end of the Elimination Period, the claimant enters the "Own Occupation Period" or "OOP." (*Id.*) Ordinarily, disability plan documents set forth a beginning and an end date for the OOP, but the Plan document effective as of Yerington's separation of employment on January 17, 2010, defined the OOP as "a period beginning at the end of the Elimination Period and ending CUSTOM WORDING REQUIRED."[1] (*Id.*).

The Plan also provides for benefits to claimants who are engaged in Partial Disability Employment under certain circumstances during the OOP. (Doc. 10-1, Plan at 24). During the first five years he received benefits under the Plan, and at least once thereafter, Yerington inquired with Lincoln as to whether he could engage in employment and still receive benefits, and, if so, to what extent. (Doc. 10, Am. Compl. ¶ 15). Lincoln allegedly "refused at all times to provide accurate and complete answers to his inquiries." (*Id.*). As a result of Lincoln's refusal to provide him with a clear answer, Yerington did not avail himself of various employment and earnings opportunities during the OOP. (*Id.* ¶ 16).

Yerington commenced this action on August 23, 2017, in the Court of Common Pleas of Franklin County, Ohio. Lincoln timely removed the action to this Court on September 27, 2017. Yerington's current First Amended Complaint (Doc. 10) seeks: (1) an injunction, under 29

---

[1] Lincoln asserts in its briefing, and in a declaration by one of its employees attached to its Reply, that the "CUSTOM WORDING REQUIRED" language in the January 2010 version of the Plan was a scrivener's error, and that Lincoln amended the Plan on February 10, 2010, so that the OOP was defined as "a period beginning at the end of the Elimination Period and ending at the end of the Maximum Benefit Period for Insured Employees." (Doc. 24-1, Vargo Decl. ¶¶ 3–4). These facts, as well as several others included in Lincoln's briefing, are not contained in the Amended Complaint. To avoid converting the present motion to one for summary judgment under Federal Rule of Civil Procedure 12(d), the Court will exclude these facts from consideration.

U.S.C. § 1132(a)(1)(B) and/or § 1132(a)(3), enjoining Lincoln "from ending the OOP"; and (2) damages in the amount of at least $2,000,000, under 29 U.S.C. § 1132(a)(1)(B), incurred by Yerington in forgone employment opportunities as a result of Lincoln's refusal to answer his questions to his satisfaction.[2] Lincoln now moves to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.   STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the

---

[2] This is the third version of the complaint filed by Yerington. The original complaint was filed in Franklin County on August 23, 2017. Yerington filed an amended complaint in Franklin County on September 27, 2017 (the same day Lincoln removed the case to this Court), but due to the idiosyncrasies of Franklin County's online filing system, Lincoln did not receive notice of the amended complaint's filing in Franklin County until September 29. Yerington's position is that the amended complaint filed September 27 in Franklin County was the operative complaint at the time of Lincoln's removal, and after Lincoln did not include the amended complaint with its removal documents (because Lincoln did not yet have notice of its existence), Yerington filed the September 27 amended complaint again in this Court on September 29, 2017. (Doc. 5). Yerington thereafter filed the present "First Amended Complaint" (Doc. 10) on October 23, 2017 after Lincoln moved to dismiss the September 27 amended complaint (Doc. 7).

Lincoln asserts that Yerington was required to and failed to obtain leave of court before filing the October 23 Amended Complaint (as he had already exhausted his one amendment as a matter of course under Rule 15 when he filed the September 27 amended complaint in this Court on September 29), but does not seek to strike the October 23 Amended Complaint on that basis. Due to the lack of clarity as to which version of the complaint was operative at the time of removal, the Court will treat the October 23 "First Amended Complaint" as properly filed. As a result, Lincoln's previous Motion to Dismiss (Doc. 7) is denied as moot.

3

plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Yerington seeks an injunction preventing Lincoln from ever deeming the OOP to be at an end, and damages incurred by Yerington in forgone employment opportunities as a result of his dissatisfaction with Lincoln's answers to his questions regarding available benefits during employment. The Court will address each claim in turn.

**A.  Injunctive relief**

Yerington asserts that because the OOP as defined in the Plan document effective on January 17, 2010 "has no end," Lincoln should be enjoined from ever deeming the OOP to have ended. There are at least two significant problems with this assertion.

**1.  Yerington's claim for injunctive relief is not ripe.**

First, there is no suggestion in the Amended Complaint that Lincoln will seek to terminate the OOP at any time in the near future. Yerington alleges that he is entitled to a maximum benefit under the Plan of $10,000 per month, and confirmed in his Response to Lincoln's Motion that he has received the full $10,000 each month since January 17, 2010, and

4

continues to receive it as of the filing of the Response. (Doc. 10, Am. Compl. ¶ 7; Doc. 23, Resp. at 2). As a result, this dispute is not ripe for the Court's resolution.

"The ripeness doctrine serves to 'avoid[ ] . . . premature adjudication' of legal questions and to prevent courts from 'entangling themselves in abstract' debates that may turn out differently in different settings." *Warshak v. United States*, 532 F.3d 521, 525–26 (6th Cir. 2008) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 807 (2003)). Assessing ripeness requires consideration of three factors: (1) the likelihood that the harm alleged by the party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage in the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits. *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 561 (6th Cir. 2008).

Here, the harm alleged by Yerington—that Lincoln will terminate the OOP—may or may not occur at some point in the future. While Lincoln's position is that the OOP has an end date, Yerington may lose his benefits for a number of reasons before his OOP elapses: for instance, he may recover from his disability, he may fail to provide proof of his continuing disability, or he may fail to pursue other income benefits for which he is eligible to offset Plan benefits (e.g., through workers' compensation or other insurance plans). (Doc. 10-1, Plan at 21, 28).

Moreover, the parties will incur no hardship if an injunction is not granted at this time. Yerington is currently receiving the maximum benefits to which he is entitled, and Lincoln has given no indication that it will cease paying these benefits so long as Yerington remains eligible. Any harm from Lincoln's termination of the OOP is therefore speculative at this point, rendering Yerington's claim for injunctive relief unripe. Accordingly, this claim will be dismissed. *River City Capital, L.P. v. Bd. of County Comm'rs,* 491 F.3d 301, 309 (6th Cir. 2007).

## 2. The language of the Plan does not compel the conclusion that the OOP has no end date.

Even if Yerington's claim for injunctive relief were ripe, the January 2010 Plan document does not plausibly suggest that Consultant Anesthesiologists, Inc. and Lincoln intended the OOP to continue indefinitely. "Under federal common law, 'ERISA plans, like contracts, are to be construed as a whole.'" *Mitzel v. Anthem Life Ins. Co.*, 351 F. App'x 74, 90 (6th Cir. 2009) (quoting *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 93 (3d Cir. 1992)). "[A] plan's provisions must be interpreted 'according to their plain meaning, in an ordinary and popular sense.'" *Caldwell v. PNC Financial Services Group, Inc.*, 835 F.Supp.2d 510, 522 (S.D. Ohio 2011) (Graham, J.) (quoting *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998)).

The provision at issue reads: "OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending CUSTOM WORDING REQUIRED." (Doc. 10-1, Plan at 3). The plain meaning of this provision is that the OOP has both a beginning and an end. And while no specific end date is supplied, the placeholder "CUSTOM WORDING REQUIRED" clearly indicates that the parties to the insurance contract had more to say about when the OOP would end. The parties could have replaced the placeholder language in any number of ways, but the provision as written clearly reflects an intent to replace the language that was not carried out for an unknown reason. Thus, this provision, even in isolation, does not suggest that "the OOP has no end" as asserted by Yerington.

Moreover, other provisions of the Plan (which must be read together with the incomplete OOP definition) suggest the parties contemplated that the OOP would end at some point. The Plan contains (on the same page as the OOP definition) a definition for "Maximum Benefit Period," which is defined as ending at the later of the insured employee's Social Security Normal

Retirement Age, or after a specified period of time determined by the insured's age at the time he or she becomes disabled, as set forth in a chart in the Plan:

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions): The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

(Doc. 10-1, Plan at 3). The Maximum Benefit Period was therefore unambiguously defined with a concrete end date. And the "ordinary and popular" meaning of Maximum Benefit Period is the greatest period of time for which an insured can receive benefits under the Plan. The incompleteness of the OOP definition does not render the Maximum Benefit Period definition ambiguous or ineffective. Yerington has therefore failed to plausibly allege that the OOP has no end date and that he should be entitled to benefits in perpetuity.

**B.     Damages**

Yerington seeks damages of at least $2,000,000 in forgone employment income based on Lincoln's "failure to provide accurate and complete information in response to [Yerington's] inquiries" under 29 U.S.C. § 1132(a)(1)(B). This provision of the Employee Retirement Income Security Act ("ERISA") permits a plan participant to commence a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* Lincoln argues, and the

7

Court agrees, that Yerington's claim for damages is not encompassed by this provision and must be dismissed.

It is well-settled that a plan participant can recover from ERISA plan fiduciaries only those benefits to which the participant is entitled under the plan; extra-contractual damages are not permitted. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) ("the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan—§ 1132(a)(1)(B) . . . —says nothing about the recovery of extra-contractual damages"); *Davis v. Kentucky Fin. Companies Ret. Plan*, 887 F.2d 689, 696 (6th Cir. 1989) ("[T]here can be no extracontractual recovery in the context of an ERISA plan."). Yerington appears to agree with this proposition, but attempts to construe the damages sought as contractual because

> it was the terms of the contract that set forth an allowance for these earnings as part of the benefits scheme contained in the Plan. The specific allowance of these earnings in the Plan Document, and Defendant's refusal to clarify the scope and nature of that allowance, means that the damages are contractual in nature, and not 'extra-contractual,' as contended by Defendant.

(Doc. 23, Resp. at 10).

Yerington's argument is not consistent with the Plan or § 1132(a)(1)(B). The Plan clearly states that the maximum benefit to which Yerington is entitled, under any circumstances, is $10,000 per month. (Doc. 10-1 at 3). Yerington does not allege in his Amended Complaint that he has received or will receive less than that amount, and he confirms in his Response that he has, in fact, been receiving that amount since he left his employment in January 2010. (Doc. 23, Resp. at 2). As a result, he has so far received all benefits due to him under the terms of the Plan, which is all he is permitted to recover under § 1132(a)(1)(B). While the Plan does contemplate certain circumstances under which participants can continue to receive benefits under the Plan while employed, income from that employment is simply not "due to him under

the terms of his plan." Yerington's claim for lost employment income is therefore not available under ERISA.

## IV. CONCLUSION

For the foregoing reasons, Lincoln's Motion to Dismiss is **GRANTED**.

The Clerk shall remove Documents 7 and 20 from the Court's pending motions list and close this case.

**IT IS SO ORDERED.**

    */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**